459 So.2d 1375 (1984)
A.J. DECUIR, Plaintiff-Appellant,
v.
SAM BROUSSARD, INC., et al., Defendants-Appellees.
No. 84-11.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
*1377 Mouton, Roy, Carmouche, Bivins, Judice & Henke, Frank W. Dawkins, Lafayette, for plaintiff-appellant.
Roy, Forrest & Lopresto, Alex A. Lopresto, III, New Iberia, for defendants-appellees.
Before FORET, CUTRER, JJ., and CULPEPPER, J. Pro Tem.
CULPEPPER, Judge Pro Tem.
Plaintiff, A.J. Decuir, brought this action against Sam Broussard, Inc. for damages due to faulty repairs and negligence in towing. Sam Broussard, Inc. (Broussard) reconvened for the amount owed on a promissory note signed by Decuir. The trial court entered judgment for Sam Broussard, Inc. in the amount of $3,672.30. Decuir appeals.
In mid-1978 Decuir acquired a Kenworth tractor powered by a Cummins 350 diesel engine with 89,000 miles on it. In September of 1979 he brought the truck to Broussard to repair a leaking head gasket. Broussard's mechanic used an impact wrench rather than torque wrench to tighten the bolts into the head and thereby cracked the head. He also used an oversized bolt which further cracked the head. He did not properly reset the push tubes in the engine. When Decuir left the shop he immediately picked up a load and departed for California. The improper workmanship caused the truck to run poorly. He stopped in Houston and phoned Mike Zaunbrecher, Broussard's service manager, who found mechanics in Houston to make temporary repairs on the engine. The repairs cost Decuir $700. He was advised by the mechanics to return his truck to Broussard's shop for an overhaul to correct completely and properly all damage when he returned from California. Decuir lost his return load from California because of the delay.
Upon his return, plaintiff returned his tractor to Broussard and asked that his engine be overhauled. Mike Zaunbrecher, the service manager, declined but did offer to replace the "rocker box" and do a complete brake job on the vehicle, at no cost to plaintiff, to compensate plaintiff for what he paid for the repairs in Houston. Plaintiff agreed and the work was done.
Decuir noticed a tapping sound in the engine after these repairs were done. He reported this to Zaunbrecher. Zaunbrecher stated that he could not hear the tapping but admitted that it might show up only under heavy load conditions. Because his shop was busy he told Decuir he could not look into the problem but to keep running the truck until they could get to it. Decuir later had Broussard replace the turbocharger on his truck. Zaunbrecher again told him to keep running the truck.
At the end of October, 1979, the engine blew up while Decuir was operating his truck in Mississippi. The trial court found that this failure of the engine was caused by improper work done to the push tubes and valves by the Broussard mechanic when the rocker box was replaced and by failure to check and adjust the valves.
Plaintiff called defendant's service manager when he broke down, and Zaunbrecher dispatched a wrecker to get the truck. The wrecker driver damaged Decuir's tractor while loading it on the wrecker.
Broussard tried to locate a rebuilt engine for Decuir but was unsuccessful. The service manager and parts manager then suggested that in order to get plaintiff on the road as quickly as possible they would obtain a new engine and sell it to Decuir at defendant's cost. They would then make a warranty claim against the engine manufacturer *1378 for the damage to the engine and afford him credit for whatever amount the manufacturer allotted against the cost of a new engine. They further assured plaintiff that this would bring the cost of a new engine to somewhere between $4,000 and $5,000. Since without his truck Decuir could not do business and could not earn any income, he agreed.
A new Cummins 400 diesel engine was obtained and installed, and in early November Decuir was presented with a bill for $17,073.09, which included $14,500 for the new engine. Defendant's cost for the engine was $12,011. Decuir was required to pay $2,100 to defendant before he could take his tractor out of the shop.
In January Decuir brought his truck to Broussard's shop for repair of the damage caused by the wrecker when the truck was towed in from Mississippi. These repairs were inadequately made and Decuir later had to have them redone elsewhere. In order to take his truck out of the shop, Decuir was forced to sign a promissory note for $15,869.77, although he denied he owed that much. He later made two $500 payments and one $300 payment.
The defendant's shop had incorrectly wired the new engine when installing it. Plaintiff was inconvenienced in his work and lost revenue for two months until another mechanic correctly wired the engine. The engine was correctly wired by the new mechanic and has given no trouble since. In the meantime batteries and an alternator were ruined as a result of the electrical problems.
At some time Decuir was given credit for $4,588 as the warranty refund from Cummins.
Decuir filed suit against Sam Broussard, Inc., Cummins Engine Company, Inc., and Cummins Sales and Service, Inc., seeking damages for faulty repair, for the engine blowout, for repairs needed as the result of negligent towing and wiring of the new engine, for lost profits, and for loss of use, inconvenience and mental anguish. Cummins Engine Company, Inc. and Cummins Sales and Service, Inc. were dismissed from the case before trial. Sam Broussard, Inc. filed a reconventional demand seeking to recover on the note signed by Decuir.
The trial court held that the plaintiff could not recover for nonpecuniary damages for mental anguish and inconvenience. It held that Decuir did not prove his loss of earnings to a legal certainty. It found partial failure of consideration sufficient to vitiate the note signed by Decuir, or alternatively, that the note was invalid due to threats and duress. It then held that, "Justice between these parties requires that plaintiff be charged defendant's cost for the new engine ($12,011.00) and the turbocharger replacement ($661.54), and be given credit for the manufacturer's warranty amount ($4,588.00), the amount he paid for repair to the damage done when his vehicle was returned from Mississippi ($612.24); the amount he paid to repair the faulty electrical work ($400.00); and the several payments he made to defendant ($3,400.00)." This leaves a net due by plaintiff to defendant of $3,672.30.
Decuir appeals from the judgment. He makes several specifications of error in his brief which raise the following issues:
1) Should Sam Broussard, Inc. be liable for the cost of the new engine, subject to credit on the warranty, since Broussard caused the old engine to blow up?
2) Did Decuir and Sam Broussard, Inc. enter into either a compromise or an accord and satisfaction which either extinguishes or estops Decuir's claim for damages?
3) Is Decuir entitled to an award for temporary repairs and lost earnings?
4) Is Decuir entitled to an award for nonpecuniary damages?
5) Should the court have awarded defendant $661.54 for a turbocharger replacement although defendant did not claim this in his reconventional demand?
Decuir's first argument is that the trial court erred in holding him liable for the $12,011 cost of the new engine for his truck, subject to credit for the $4,588 warranty *1379 claim allowed by the manufacturer, since the trial court found that the cause of his old engine blowing up was the negligent repair work done by defendant's mechanic.
Decuir signed the note on January 30, 1980 covering the $15,869, allegedly owed to Sam Broussard, Inc. We agree with the trial court that there was only a partial failure of consideration for the note. Part of the consideration for the note was the new and larger engine and the turbocharger replacement, which benefited plaintiff. Thus, the note is valid in the amount of $12,672.54, which is the cost of the new engine ($12,011) and the amount charged for the turbocharger replacement ($661.54). However, Decuir got little or no value out of the rest of the items that went to make up the note. All of the remainder of the work done by Broussard on the truck was faulty.
We do not agree with the trial court that the note was vitiated by threats and duress. Broussard had a right to hold the truck until paid for the repairs. LSA-R.S. 9:4501. Telling Decuir that he would do what he had a right to do was not a threat. We realize that Decuir needed his truck to make a living, but the fact that he had to make arrangements to pay what he owed for repairs before he took the truck out of the shop is not the type of threats or duress that will vitiate a contract under LSA-C.C. arts. 1850-1851.
The trial judge correctly found the old engine blowout was caused by improper work done to the push tubes and valves by defendant's mechanic when the rocker box was replaced and by failure to check and adjust the valves. Every contract for work or services carries an implied obligation on the part of the contractor that he will perform in a good workmanlike manner in default of which he must respond in damages for the losses that may ensue. Hebert v. Pierrotti, 205 So.2d 888 (La.App. 3d Cir.1968), LSA-C.C. 1930. The defendant did not perform the work in a workmanlike manner and is liable to Decuir for any damages caused thereby.
However, plaintiff has the burden of proving any damage suffered by him as a result of breach of contract, Campbell v. Lelong Trust, 327 So.2d 533 (La.App. 2d Cir.1976), writ denied, 331 So.2d 494, 496 (La.1976). We do not believe the plaintiff has sustained the burden of proving his damages from the engine blowout. Roshong v. Travelers Insurance Company, 281 So.2d 785 (La.App. 3d Cir.1973), sets forth three tests which have been used in determining property damage:
1) The cost of restoration, if the damaged object cannot be adequately repaired;
2) The difference in the value of the damaged property preceding and subsequent to the injury;
3) If the value before and after damage cannot be fairly determined or if the cost of repairs exceeds the value of the thing damaged, damages should equal the replacement cost less depreciation.
Decuir did not offer sufficient evidence to prove any of the above tests. Instead he argues that defendant must make him whole by providing him with a new engine. In awarding property damage to a party who has been injured through the legal fault of another, the primary objective is to restore him in as near a fashion as possible to the state in existence at the time immediately preceding the injury. Roshong, supra. Decuir had a Cummins 350 engine with about 150,000 miles on it at the time of replacement. He is only entitled to be restored to the same position. He is not entitled to a new Cummins 400 engine. The new engine puts him in a position better than that which he was in prior to the engine troubles. Decuir would have been entitled to an award for damages to his old engine had he proved them, but he is not entitled to a new engine.
Decuir's second argument is that the trial court erred in holding, in effect, that Broussard and Decuir entered in either a compromise or accord and satisfaction of any claim he had for negligent breach of defendant's duty to repair his *1380 truck when he agreed to buy the engine for Broussard's cost.
The agreement was not a compromise since it was not reduced to writing as required by Article 3071 of the Civil Code.
We do not believe the agreement was an accord and satisfaction. There was no evidence that it was intended to be a final settlement of any claims for negligent breach of Broussard's duty to repair the truck. There was nothing to indicate that this would settle the claims for lost loads, damage done to the truck when towed back from Mississippi, lending out of his trailer, or loss of earnings as a result of the negligence.
Since it was neither a compromise nor an accord and satisfaction, Decuir still had a cause of action for breach of the duty to make repairs in a workmanlike manner.
Decuir next argues that the trial court erred in failing to award certain pecuniary damages.
He contends the court erred in failing to award $700 for temporary repairs in Houston. When he returned from Houston defendant performed a complete brake job. The trial court apparently concluded that this was an accord and satisfaction. We find no error.
The rest of the pecuniary damages he claims are lost earnings. Since these were not proved to a certainty they cannot be recovered. His claims are for gross earnings and do not take expenses into account. He did not prove what he would have cleared. This is shown on his income tax Schedule C, where his profits were a small fraction of his gross income for two years, and for one year his business had a loss. The lost income for his down time was not proved to a certainty. The losses from loads he lost were not proved to a certainty. The $2,800 and $600 he claims for lost loads were gross amounts. He did not prove what he would have after subtracting expenses. He also did not prove the value of lending out his trailer for a month. He did not know what it would rent for.
The trial court did not err in failing to award pecuniary damages for (1) $700 for temporary repairs in Houston; (2) $2,800 for the loss of his return load from California; (3) $600 for the loss of his load in Mississippi when his engine blew up; (4) $1,000 for the loan of his trailer for one month; or (5) $25,500 in lost income due to down time.
Decuir next argues that the trial court erred in failing to award damages for substantial aggravation and inconvenience. These are nonpecuniary damages. The Supreme Court held in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976) that nonpecuniary damages are not recoverable for breach of contract, unless intellectual gratification is the principal cause of the contract. Decuir argues that this is a tort action rather than an action for breach of contract. We disagree. The failure to properly do the work contracted for was a breach of the contract for the services. Decuir then argues that Gele v. Markey, 387 So.2d 1162 (La.1980) can be read as allowing recovery for real and substantial mental anguish if clearly proven. Justice Dennis, in his opinion in Gele stated that there was no real evidence that the plaintiffs derived substantial intellectual enjoyment from the operation of their store. He notes that the Meador decision has been criticized and went on to say that plaintiffs failed to prove that they suffered real, substantial emotional distress or loss of intellectual enjoyment. Leach v. Freeman, 395 So.2d 440 (La.App. 3d Cir.1981), writ denied, 400 So.2d 668 (La.1981), which was decided after Gele, held that nonpecuniary damages as a result of breach of a contract for the repair of a movable are not recoverable. Decuir cannot recover nonpecuniary damages for inconvenience, mental distress, and substantial aggravation.
In his final argument, Decuir contends the trial court erred in awarding Broussard $661.54 for a turbocharger replacement since the reconventional demand was on a note and this claim was not plead. This contention lacks merit. Since we found above that the part of the note covering *1381 the turbocharger replacement was valid, Broussard can recover on the note rather than on a quantum meruit basis. Broussard is entitled to the $661.54, and we uphold the trial court's award of this amount.
The judgment of the trial court is affirmed and costs are assessed to the plaintiff-appellant.
AFFIRMED.